[No. 18311. Department Two. June 4, 1924.]

CHAS. M. HESS, *as Executor etc., Appellant,* v. STATE
BANK OF GOLDENDALE, *Respondent,* E. R.
MORGAN *et al., Defendants.*[1]

LIMITATION OF ACTIONS (78)—MORTGAGES (113)—PAYMENTS—RE-VIVAL OF LIEN—SUBSEQUENT GRANTEES OR INCUMBRANCERS. Payments on a first mortgage, made by the mortgagor while he holds the title and the property is in his possession, after the giving of a second mortgage, will toll the running of the statute of limitations against the action to foreclose the first mortgage.

Appeal from a judgment of the superior court for Klickitat county, Kirby, J., entered May 22, 1923, in favor of the plaintiff as against one defendant, in an action to foreclose a mortgage, tried to the court. Reversed.

*Bixby & Nightingale* and *Brooks & Brooks,* for appellant.

*John R. McEwen,* for respondent.

[1]Reported in 226 Pac. 257.

BRIDGES, J.—This case involves the statute of limitations.

On June 1, 1910, the defendants Morgan and wife gave the appellant, Chas. M. Hess, their promissory note for $5,000, payable on or before two years from that date, and secured it by a mortgage upon certain real estate then owned by them. About a year later they gave the respondent their note for $12,000, and secured it by a mortgage upon the same property. When these mortgages were given, that to the appellant was the first and that to the respondent the second mortgage. Both mortgages were duly recorded. On February 27, 1915, the Morgans conveyed their land to the defendant Morgan Milling Company. They and the milling company, from time to time, paid the interest and a part of the principal of the first mortgage debt, the last payment being made August 15, 1921. We are unable to determine from the record when the Morgans ceased making payments. In 1921, the respondent foreclosed its so-called second mortgage, but did not make the appellant a party thereto. At the foreclosure sale, the respondent bought in the property. About a year later, and in September, 1922, the appellant brought suit to foreclose his so-called first mortgage, making the respondent and others defendants. The respondent, as defendant, plead the statute of limitations. Upon trial the court held that the statute had run and the mortgage could not be foreclosed. The plaintiff, who was the holder of the first mortgage, has appealed.

The respondent contends that a mortgagor cannot, by act or agreement, toll the statute of limitations as against either a subsequent grantee or a subsequent encumbrancer of the land first mortgaged, and chiefly relies on *Raymond v. Bales,* 26 Wash. 493, 67 Pac. 269.

The appellant, while admitting that a mortgagor has no power to toll the statute as against a subsequent grantee, contends that so long as the legal title remains in him he has such power as to a junior mortgage or lien, citing *Bode v. Rhodes,* 119 Wash. 98, 204 Pac. 802.

We have held that when a debt is once barred the mortgagor cannot revive it as against a subsequent grantee of the mortgaged lands. *Damon v. Leque,* 17 Wash. 573, 50 Pac. 485, 61 Am. St. 927. We have also held that the absence of a mortgagor from the state will not suspend the running of the statute of limitations as to a subsequent grantee of the mortgaged lands. *George v. Butler,* 26 Wash. 456, 67 Pac. 263, 90 Am. St. 756, 57 L. R. A. 396. We have also held that payments on his mortgage indebtedness made by a mortgagor after he has parted with the title will not extend the statute of limitations as against a subsequent grantee. *Hanna v. Kasson,* 26 Wash. 568, 67 Pac. 271. While these cases hold that a mortgagor may not, after he has parted with the title to the land, suspend the running of the statute of limitations as against his grantee, yet they do not determine the exact point involved here, which is, can a mortgagor, by payments made on his first mortgage while he owns the mortgaged land, toll the statute of limitations as against a subsequent mortgage made by him on the same property, his payments having been made after the giving of the second mortgage.

We have two cases, however, which do apparently decide the question involved here, the one decision being in conflict with the other, the later one not expressly overruling the earlier one. See *Raymond v. Bales,* and *Bode v. Rhodes, supra.* Since the writing of the *Raymond* opinion the court seems to have assumed that the question involved there was the right

of a mortgagor to toll the statute as against a subsequent grantee of the mortgagor and not a subsequent mortgagee or lienor. In *White v. Krutz,* 37 Wash. 34, 79 Pac. 495, referring to that and other of our cases, Judge Fullerton, speaking for the court, said:

"But it will be observed that in these cases the mortgagor attempted to extend the lien of the mortgage after he had parted with his interests in the mortgaged property, and this it was held he could not do."

Again, in the *Bode* case, referring to the *Raymond* and other cases, Judge Hovey, speaking for the court, said:

"These are cases where the mortgagors had parted with their title to the property and do not apply to this case."

But notwithstanding what we have said about the *Raymond* case, a careful reconsideration of it convinces us now that it did concern a subsequent lien and not a subsequent transfer of the title, and that it supports the contentions of the respondent. The facts there were these: On the 30th of September, 1889, one Wood gave a mortgage upon certain real estate to secure his indebtedness. In February, 1896, Bales secured a judgment against Wood, which on that date became a lien on the mortgaged land. He subsequently sold the land under his judgment lien, bought it at the sale, and after the year of redemption—in April, 1901—obtained from the sheriff a deed thereto. The last payment made by Wood on the mortgaged indebtedness was in February, 1899. The suit to foreclose the mortgage was begun in February, 1901. It will thus be observed that the payments by Wood were made while Bales had his judgment lien, but before the sheriff's deed to him, which, of course, had the effect of transferring the legal title from Wood to Bales, so that the exact ques-

tion involved there was whether payments made on the mortgage after the judgment lien attached could toll the statute as against the person having the lien. We quoted fully from, and approved the doctrine of, *Wood v. Goodfellow,* 43 Cal. 185, which held, and seems to have been the doctrine of the California courts since that time, that the mortgagor may not toll the statute as against a subsequent grantee, a second mortgage or a subsequent lienor.

A part of our quotation from the *Goodfellow* case is as follows:

" 'But this court has repeatedly decided that as against subsequent incumbrancers or a subsequent holder of the equity of redemption, the mortgagor has no power, by stipulation, to prolong the time of payment, or in any manner increase the burdens on the mortgaged premises.' "

We then said:

"This court having approved the doctrine in the above case, it must be held here that the encumbrance of appellant's judgment lien and the levy and sale thereunder vested appellant with such interest in the land as prevented the mortgagor from stipulating an extension of the statute of limitations as to the right of action to foreclose the mortgage against appellant."

We must hold that the *Raymond* case, *supra,* is directly in point in favor of the respondent here.

But years after the decision in that case, and in the case of *Bode v. Rhodes, supra,* we laid down a contrary doctrine. In that case, Rhodes, in January, 1912, mortgaged certain land to secure his indebtedness, and later in the same year contracted to sell the mortgaged property to Tannehill, who did not get his deed till March, 1916. The mortgagor paid interest on the mortgage until January, 1920. We said:

"Appellants [Tannehill and wife] contend that the payment of interest by the mortgagors would not keep

the mortgage alive or prevent the bar of the statute of limitations from commencing to run from the date that they took their contract.''

After citing a number of our previous cases, including *Raymond v. Bales, supra,* which appellants contended supported their theory, we continued:

''These are cases where the mortgagors had parted with their title to the property and do not apply to this case. As long as the legal title remains in the mortgagor the relation of mortgagor and mortgagee exists and the mortgagee can safely deal with the original mortgagor.''

It will be observed that we there announced the rule that a mortgagor may toll the statute as to a mortgage given by him so long as he holds the legal title to the land. Respondent contends that the decision in that case could justly rest upon the idea that Tannehill did not put of record his contract for the purchase of the mortgaged lands, and that because thereof he would not be permitted to assert his interest therein. But it was expressly denied upon the other theory. It would seem, therefore, that we are now in position where we should select between the conflicting doctrines of the *Raymond* case and the *Bode* case, following one and expressly overruling the other.

The authorities on the question are divided. The holding of the *Bode* case appeals to us as being more nearly in accord with equitable principles and fair dealing in the business world. As long as the mortgagor owns the land which is mortgaged he has a direct and primary interest concerning the encumbrance thereon. The very interest which would induce him to pay the debt and clear his land would also empower him to toll the statute of limitations. That he may so do as between himself and his mortgagee, no authority doubts. After he has once parted with the title to the

land, he loses all interest in it and ought not to be permitted to create any new obligations upon it or to extend old ones, and so it has been justly held that, under such circumstances, he may not toll the statute as to a mortgage given by him.

To hold that a mortgagee may not deal with his mortgagor so long as he owns the mortgaged land is to force the mortgagee to deny to the mortgagor the usual extensions of time for payment which are so customary and beneficial in the business world. Such a doctrine would simply increase the burdens and hardships of the debtor without accomplishing any corresponding good. Nor can we see how the second mortgagee or a subsequent lienor can justly claim that the mortgagor may not toll the statute of limitations. He takes his mortgage or subsequent lien knowing that it is junior to the first mortgage. There is no equity in a rule which arbitrarily converts a second mortgage into a first one. To hold that the mortgagor may, while he owns the title to the mortgaged property, toll the statute of limitations is to leave the second mortgagee or subsequent lienor in exactly the position he occupied when he obtained his rights. We, therefore, elect to follow the doctrine of the *Bode* case, *supra,* to the effect that "as long as the legal title remains in the mortgagor the relation of mortgagor and mortgagee exists, and the mortgagee can safely deal with the original mortgagor," and to overrule the case of *Raymond v. Bales, supra.* We may more freely do so because it is plain from our expressions in other cases that for many years we have not considered the *Raymond* case as deciding the question involved here.

We do not find discussed in the briefs the question whether payments on the mortgage made by the mortgagor's grantee will have the effect of tolling the stat-

ute as to the subsequent lien. The parties to this action seem to have assumed that his payment would have the same effect as if made by the original mortgagor. For this reason, and in view of the fact that there does not seem to be any showing as to when the original mortgagor ceased making his payments, and in view of the further fact that he was a party defendant in this action and suffered judgment to run against him, we will not discuss that question.

We are of the opinion that the trial court should have foreclosed the appellant's mortgage. The judgment is reversed and the cause remanded for proceedings in accordance herewith.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.