# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SAINT MARTIN'S UNIVERSITY, | No. 48064-6-II |
| Appellant, | |
| v. | |
| CARMEN FLORES and the marital community composed of CARMEN FLORES and JOHN DOE FLORES, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — St. Martin's University appeals the superior court's summary dismissal of its claims to recover debts owed by Carmen Flores, a former St. Martin's student. St. Martin's also appeals the superior court's award of attorney fees to Flores. Flores owed two debts to St. Martins: $1,900.00 of unpaid Federal Perkins Loans[1] received in 1997 and 1998, and $642.85 of unpaid tuition stemming from an additional class in 2002.

The superior court dismissed St. Martin's claims as untimely and insufficiently pleaded under CR 8. St. Martin's appeals, arguing that its first claim is not barred by the statute of limitations because federal law preempts state statutes of limitations on suits for recovery on Federal Perkins Loans, and that its second claim was based not on the unpaid tuition balance from 2002, but on a dishonored check written by Flores in 2008 and, therefore, its claim was

---

[1] Perkins Loans are low interest federal loans made by the recipient's school to undergraduate and graduate students who demonstrate exceptional financial need. *Federal Perkins Loan Program*, U.S. Department of Education (Oct. 7, 2016, 12:00 P.M.) www.2.ed.gov/programs/fpl/index.html

timely. We reverse the dismissal of the first claim, affirm dismissal of the second claim, reverse the award of attorney fees and remand for further proceedings consistent with this opinion.

FACTS

Carmen Flores attended St. Martin's University (f/k/a St. Martin's College) from 1997 until 2002. During her time there, Flores signed multiple promissory notes for Perkins Loans to help fund her education. In addition, after earning her degree in 2001, Flores took a class at St. Martin's in 2002. Flores owed St. Martin's approximately $500 tuition for that class. Despite several notices and demands to pay, Flores never paid the outstanding tuition balance. As of December 30, 2002, Flores owed St. Martin's over $600 including late charges, collection fees, and interest. On November 18, 2008, Flores wrote a check for the outstanding tuition balance, but the check was rejected for insufficient funds.

On January 3, 2014, St. Martin's filed a complaint against Flores for recovery of the unpaid Perkins Loans and the outstanding tuition balance. St. Martin's complaint characterized its claims as follows:

> Defendant Carmen Flores became indebted to Plaintiffs for educational services provided to Defendant beginning on or around October 3, 1997. Despite demands the Defendant has failed to pay as required and there is now due and owing $1,900.00, plus interest at the rate of 5% from October 3, 1997, plus collection costs of $1,484.51.
> Defendant Carmen Flores became indebted to Plaintiffs for educational services provided to Defendant beginning on or around January 1, 2003. Despite demands the Defendant has failed to pay as required and there is now due and owing $642.85, plus interest in the rate of 12% from November 18, 2008 plus collection costs of $475.75.

Clerk's Papers (CP) at 7. Flores answered the complaint and raised the affirmative defense that both claims were barred by Washington's statute of limitations. After submitting to mandatory arbitration, St. Martin's requested a trial de novo.

Flores moved for summary judgment, arguing that both claims were barred by Washington's six-year statute of limitations set out in RCW 4.16.040(2). St. Martin's argued in response that federal law preempts statutes of limitations on suits for recovery on Perkins Loans, and that its second claim was based not on the unpaid tuition balance from 2002, but on a dishonored check written by Flores in 2008 and, therefore, its claim was timely. The superior court granted Flores's motion for summary judgment, concluding that St. Martin's failed to affirmatively plead federal preemption, and that St. Martin's second claim was based on a "ledger balance debt" such that both of St. Martin's claims were susceptible to Washington's six-year statute of limitations.

St. Martin's appeals.

ANALYSIS

We review a summary judgment order de novo, and perform the same inquiry as the trial court. *Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A motion for summary judgment accepts all facts and reasonable inferences in the light most favorable to the nonmoving party. *Kofmehl*, 177 Wn.2d at 594. Considering the facts in the light most favorable to the nonmoving party, the motion for summary judgment should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 649, 336 P.3d 1112 (2014).

Here, the parties do not dispute the material facts. Accordingly, the only issues are questions of law, which we review de novo.

## I. Claim 1—Perkins Loans

St. Martin's argues that the superior court erred by granting summary judgment on their first claim pertaining to Flores's unpaid Perkins Loans. Specifically, St. Martin's argues that the Washington statute of limitations, upon which the superior court based its summary judgment dismissal, does not apply to claims involving Perkins Loans because it is federally preempted by the Higher Education Act (HEA) of 1965, *as amended* at 20 U.S.C. §1001-1161aa-1. We agree.

Flores contends that St. Martin's waived its federal preemption argument by failing to include it in its complaint. Generally, CR 8(c) requires a defendant to adequately plead an affirmative defense in her complaint. CR 8(c). As an affirmative defense, Flores bears the burden to prove Washington's statute of limitations barred St. Martin's claims. *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 267, 189 P.3d 753 (2008). Conversely, a plaintiff carries the burden of proof if he alleges that the statute of limitations was tolled and does not bar the claim. *Overlake Hosp. Med. Ctr.*, 164 Wn.2d at 267. However, CR 8 does not require a plaintiff to plead a response to an affirmative defense raised in a defendant's answer. See CR 8(d) ("Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."). Therefore, we hold that St. Martin's did not waive its argument that the Washington statute of limitations is federally preempted as it pertains to Perkins Loans.

Next, we examine whether Washington's statute of limitations applies to St. Martin's claims, or whether the statute is federally preempted as it pertains to Perkins Loans. Whether the statute of limitations bars a suit is a question of law we review de novo. *Bennett v. Computer Task Group, Inc.*, 112 Wn. App. 102, 106, 47 P.3d 594 (2002).

4

The parties do not dispute that the loans in question are Perkins Loans made in 1997 and 1998 and are secured by promissory notes.[2]  As the loans were made in 1997 and 1998, the Washington six-year statute of limitations, if applicable, would preclude suit for recovery on this claim.  RCW 4.16.040(2).

The United States Constitution's Supremacy Clause gives the federal government the power to preempt state law.  *Snohomish County v. Pollution Control Hearings Bd.*, 192 Wn. App. 316, 341, 368 P.3d 194 (2016).  Congress may preempt state law in three manners, only one of which, express preemption, is at issue here.[3]  *Campbell v. Dep't of Soc. and Health Servs.*, 150 Wn.2d 881, 897, 83 P.3d 999 (2004).  "Express preemption" occurs when Congress "states in explicit terms its intent to preempt state law."  *Peterson v. Kitsap Cmty. Fed. Credit Union*, 171 Wn. App. 404, 417 n. 14, 287 P.3d 27 (2012) (quoting *Am. Bankers Ass'n v. Lockyer*, 239 F.

---

[2] In response to St. Martin's appeal, Flores contends for the first time that St. Martin's complaint insufficiently described Perkins Loans, or any student loans in general, as the basis of its claim. She asserts that St. Martin's "attempted to change its [c]laim" by describing its claim as being based on Perkins Loans for the first time in its response to her motion for summary judgment, and that by doing so she was given insufficient notice of the claim.  Br. of Resp't at 15. However, she never made this argument to the superior court.  Instead, in her motion for summary judgment, Flores stated, "These are all Perkins Loans made in 1997 and 1998 made pursuant to the Higher Education Act of 1965 as amended in 1998," and provided exhibits of the promissory notes pertaining to the loans as well as excerpts from the Higher Education Act.  CP at 150.  Flores based her entire argument in support of summary judgment on the premise that these Perkins Loans were outside the range of the federal preemption safeguards argued by St. Martin's.  Flores clearly understood that the Perkins Loans formed the basis of St. Martin's claim and moved for summary judgment on that premise.  Therefore, Flores waived any argument that St. Martin's insufficiently pled its claim.

[3] Preemption may also occur where Congress intends to exclusively occupy a field (field preemption) and where it is impossible to comply with both state and federal law (conflict preemption).  *Campbell v. Dep't of Soc. and Health Servs.*, 150 Wn.2d 881, 897, 83 P.3d 999 (2004).

Supp. 2d 1000, 1007 (E.D. Cal. 2002).  There is a strong presumption against preemption under Washington law.  *Pollution Control Hearings Bd.*, 192 Wn. App. at 341.

Enacted in 1965, the HEA was the first comprehensive government program designed to provide scholarships, grants, work-study funding, and loans for students to attend college.  *See* Pub. L. No. 89-329, 79 Stat. 1219 (Nov. 8, 1965) (codified as amended at 20 U.S.C. §§ 1001-1161aa-1 (2008); Julie Margetta Morgan, *Consumer-Driven Reform of Higher Education: A Critical Look at New Amendments to the Higher Education Act*, 17 JOURNAL OF LAW AND POLICY 531, 540 (2009).  Title IV of the HEA directs the Secretary of the Department of Education to implement various federal student financial aid programs.  *De La Mota v. U.S. Dep't of Educ.*, 412 F.3d 71, 74, (2d Cir. 2005).  The Perkins Loan program is one such program, designed to assist institutions of higher education in financing low interest loans to financially needy students.  *De La Mota*, 412 F.3d at 74; see 20 U.S.C. § 1070; 20 U.S.C. § 1087aa-ii.

In 1991, Congress adopted the Higher Education Technical Amendments codified in part in former 20 U.S.C. § 1091a (1991).  The amendments eliminated all statutes of limitation on actions to recover on defaulted student loans for certain classes of lenders.  *United States v. Phillips*, 20 F.3d 1005, 1007 (9th Cir.1994).  Section 1091a(a)(1) states, "It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced."  Section 1091a(a) clearly states Congress's explicit intent to preempt state statutes of limitation pertaining to federally guaranteed educational loans.

Section 1091a(a) proceeds, in relevant part:

(2) Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed,

a judgment may be enforced, or an offset, garnishment, or other action initiated or taken by—
. . . .
(C) an institution that has an agreement with the Secretary pursuant to section 1087c or 1087cc(a) of this title that is seeking the repayment of the amount due from a borrower on a loan made under part C or D of this subchapter after the default of the borrower on such loan.

Neither party contests that St. Martin's is "an institution that has an agreement with the Secretary." Moreover, this condition is evident by the promissory notes signed by Flores. To offer federally guaranteed loans, such as the Perkins Loans received by Flores, a university must have an agreement with the Secretary. 20 U.S.C. § 1094. It is undisputed that Flores received Perkins Loans from St Martin's, thus demonstrating that St. Martin's "has an agreement with the Secretary" as required by Section 1091a(a)(2)(C).

In her motion for summary judgment, Flores argued that her Perkins Loans were not "made under part C or D" and therefore were not exempted from statutes of limitation. CP at 151. However, she was incorrect. Section 1091a(a)(2)'s elimination of statutes of limitation has always included Perkins Loans. Over the lifetime of the HEA, the letter designation of the subpart pertaining to Perkins Loans has changed from "E" to "D" as part of the codification process; correspondingly, Section 1091(a)(2)(C)'s language has been amended to properly cross reference the subpart on Perkins Loans. Flores's faulty argument stems from her comparison of Section 1091(a)(2)(C) as codified today to the HEA as originally codified in 1965. In its current form, the section pertaining to Perkins Loans is part D. 20 U.S.C. § 1087aa-ii.

Because St. Martin's had no obligation to amend its complaint to address Flores's affirmative defense, and because Washington's statute of limitations does not apply to suits for recovery on Perkins Loans, summary judgment on St. Martin's first claim was improper.

7

## II. Claim 2—Dishonored Check

St. Martin's also argues that the superior court erred by finding that St. Martin's second claim was based on a ledger balance debt that became payable on or before June 30, 2002, and thus the claim was barred by the six-year statute of limitations in RCW 4.16.040(2). St. Martin's contends that the second claim was based on the dishonored check written by Flores on November 11, 2008, and was, therefore, timely. Because St. Martin's complaint was insufficient to give Flores notice that St. Martin's second claim for relief was based on her dishonored check rather than her outstanding tuition balance, we hold that summary judgment on this claim was proper.

"[A] complaint [for relief] must 'apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest.'" *Kirby v. City of Tacoma*, 124 Wn. App. 454, 469-70, 98 P.3d 827 (2004) (quoting *Molloy v. Bellevue*, 71 Wn. App. 382, 385, 859 P.2d 613 (1993)). "'A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests.'" *Kirby*, 124 Wn. App. at 470 (quoting *Dewey v. Tacoma School Dist. No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999)).

In its complaint, St. Martin's characterizes its second claim as follows:

> Defendant Carmen Flores became indebted to Plaintiffs for educational services provided to Defendant beginning on or around January 1, 2003. Despite demands the Defendant has failed to pay as required and there is now due and owing $642.85, plus interest in the rate of 12% from November 18, 2008, plus collection costs of $475.75.

CP at 7. The language of St. Martin's complaint plainly stated its claim to recover on Flores's debt for "educational services" that became due "on or around January 1, 2003." St. Martin's used the same term—"educational services"—to describe the basis of Flores's debt in its first

8

claim. The parties agree that "educational services" described Flores's debt from the unpaid balance of her Perkins Loans used for tuition in the first claim. Use of this identical phrase does not adequately apprise Flores of a claim based on an entirely different theory as it relates to the $642.85 debt.

Furthermore, the date of indebtedness described in the claim is January 1, 2003. As of January 1, 2003, Flores had an outstanding balance of $600.51[4] stemming from her unpaid tuition. Flores did not render the dishonored check until over five years later. Although the claim alleges that *interest* on Flores's debt began accruing on the date of the dishonored check, it plainly states that the debt itself was established "on or around January 1, 2003."

St. Martin's did not characterize its second claim as being based on the dishonored check until its response to Flores's motion for summary judgment. "A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." *Dewey*, 95 Wn. App. at 26. St. Martin's mere mention of the date of the dishonored check as the date interest began to accrue was not sufficient to give Flores fair notice of the grounds upon which the claim rested.

As previously mentioned, RCW 4.16.040 requires an action on an account receivable be commenced within six years. The statute of limitations begins to run from the day the debt is due and demandable. *See Hopper v. Hemphill*, 19 Wn. App. 334, 336-38, 575 P.2d 746 (1978). The record shows that St. Martin's demanded payment in full on Flores's outstanding balance on

---

[4] Flores's balance as of January 1, 2003, included the principal charge of $541.50, a $25.00 in-house collection fee, and six months of interest charges equaling $34.01, for a total balance of $600.51.

9

June 30, 2002. Under RCW 4.16.040, the statute of limitations on this claim expired six years later on June 30, 2008. St. Martin's did not file its complaint until January 3, 2014.

Because the statute of limitations on St. Martin's second claim expired more than five years before St. Martin's commenced suit, the claim is barred and summary judgment was proper.

### III. ATTORNEY FEES IN SUPERIOR COURT

St. Martin's also argues that the superior court's award of attorney fees to Flores must be reversed. The superior court awarded $13,980.00 in attorney fees to Flores under chapter 4.84 RCW following its decision to grant summary judgment in her favor. Because we partially reverse the summary judgment order and remand for further proceedings, any award for attorney fees based on chapter 4.84 is premature. Consequently, we reverse the superior court's order awarding attorney fees to Flores.

### IV. APPELLATE ATTORNEY FEES

St. Martin's argues that it is entitled to attorney fees based on the promissory notes. Flores also argues that she is entitled to attorney fees based on chapter 4.84 RCW. Because we reverse summary judgment and remand for further proceedings on St. Martin's first claim, St. Martin's request for appellate attorney fees is also premature. Likewise, Flores is not a substantially prevailing party and is therefore not entitled to attorney fees.

### CONCLUSION

We reverse summary judgment as it pertains to St. Martin's first claim for recovery on Flores's outstanding Perkins Loans, but we affirm summary judgment dismissal of St. Martin's second claim for recovery on Flores's outstanding ledger balance. We reverse the superior

No. 48064-6-II

court's award of attorney fees because, based on our decision here, the request for attorney fees is premature. We remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, A.C.J.

Melnick, J.